UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

ALPER AUTOMOTIVE, INC. D/B/A AA
IGNITION, a Florida corporation,

    Plaintiff,                                             CASE No.: 9:18-cv-81753-Brannon

v.

DAY TO DAY IMPORTS, INC.,
a California corporation,

    Defendant.

_____/

**DEFENDANT DAY TO DAY IMPORTS, INC.'S MOTION FOR SUMMARY
JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

    Defendant, Day To Day Imports, Inc. ("Day to Day" or "Defendant"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1, hereby moves for summary judgment, or in the alternative, for partial summary judgment, and in support thereof, states as follows:

**I.    INTRODUCTION**

    This action centers on a series of Digital Millennium Copyright Act (DMCA) takedown notifications ("Takedown Notifications") sent by Defendant's counsel to Amazon.com directed to alleged copyright infringement of a design found on a sticker sheet, and whether Day To Day sought to remove Plaintiff's listing because Defendant had a reasonable, good faith belief that, as a licensee, it was enforcing a valid copyrighted work. Plaintiff's case rests on the untenable position that Defendant made *material, knowing misrepresentations* to Amazon, i.e., that Defendant *knowingly and wrongfully* sought to remove Plaintiff's listing for containing copyrighted material.

    In June 2017, Harold Walters ("Mr. Walters") submitted a report of copyright infringement against Defendant's Amazon listing for a sticker sheet. UMF ¶ 1. Mr. Walters informed Defendant that he created the design on the sticker sheet that Defendant was selling, including, inter alia, the

1

truck icons found on the top row, as well as the order and arrangement of the icons. UMF ¶ 2. Defendant referred the matter to Mr. Yehuda Nourollah, who has been in the after-market car accessories business since around 2005. UMF ¶¶ 3-4. Mr. Nourollah believed the design of the truck icon and the arrangement of the iconography was unique in the marketplace, and decided it made sense to seek a license from Mr. Walters for his copyrighted work. UMF ¶ 5-6.

During the negotiations, Mr. Walters represented to Defendant that he had obtained a valid and enforceable copyright on a design similar to the one Defendant sold, but with the words "GM Climate Control V7" on the bottom left corner. UMF ¶ 7. Before entering into the licensing agreement with Walters, Mr. Nourollah had multiple conversations with Mr. Walters about the design, made sure to obtain copies of his copyright registrations (the "Walters Copyrights"), and see the work in question. UMF ¶¶ 8-9. Mr. Walters came across as an honest person who was policing his rights, and Defendant had no reason to doubt his representations. UMF ¶ 10.

At first, Mr. Walters submitted the Takedown Notifications to Amazon himself. However, the sheer number of people copying his design on Amazon became too much work for Walters, and so he asked Defendant to submit the Takedown Notifications to Amazon on his behalf. UMF ¶¶ 11-12. Due to the number of alleged infringers, Defendant submitted Takedown Notifications to over a dozen sellers simultaneously. UMF ¶ 13.

Through a series of unfortunate events, Plaintiff's listing was reported as infringing to Amazon on four separate occasions, without Defendant realizing that it was reporting the same listing since it did not receive a counter-notice from Amazon. UMF ¶¶ 13-23. The last time Defendant submitted a Takedown Notification on Plaintiff's listing was November 19, 2018. UMF ¶ 25. On December 27, 2018, Plaintiff filed this action alleging five Counts against Defendant. [D.E. 1.] Count I, Declaratory Relief, Count II, Tortious Interference with Business Advantage, Count III, Injurious Falsehood and Product Disparagement, Count IV, Florida Deceptive and Unfair Trade Practices Act, and Count V, Misrepresentation of Copyright Infringement Under Digital Millennium Copyright Act (17 U.S.C. § 512(f). *Id.*

All five of Plaintiff's claims fail as a matter of law. Count V fails because it requires a knowing and material misrepresentation, and Defendant had a subjective good faith belief it had licensed a valid and enforceable copyright from Walters. UMF ¶ 31. Counts II-IV, the state law claims, are all preempted by Count V under the circumstances in this case, and even if they were not preempted, they fail individually as well. Count I is moot because Defendant has stated it has

not submitted any Takedown Notifications as to Plaintiff's listing since November 19, 2018, and does not plan on submitting any in the future.

Accordingly, Defendant respectfully requests the Court grant this motion in its entirety and dismiss the claims against Defendant.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (*citing Anderson*, 477 U.S. at 247-48). A fact is material if "it would affect the outcome of the suit under the governing law." Id. (*citing Anderson*, 477 U.S. at 247-48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id*. However, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the nonmovant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact. *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (*quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)) (unpublished). Instead, "[t]he non-moving party must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Id.* (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce

3

evidence, going beyond the pleadings, to show that a reasonable jury could find in favor of that party. *See Shiver*, 549 F.3d at 1343.

### III.   SUMMARY JUDGMENT IS APPROPRIATE AGAINST ALL OF PLAINTIFF'S REMAINING CLAIMS.

#### A.   Plaintiff has Failed to Establish Its § 512(f) Claim Through Competent Evidence (Count V)[1]

Plaintiff's claim under §512(f) fails because Plaintiff cannot meet its burden to prove that Defendant made *knowing*, material misrepresentations to Amazon when it requested that Amazon take down material that it reasonably believed infringed a valid, copyright registered work.

> (f)Misrepresentations.—Any person who knowingly materially misrepresents under this section—
>   (1)that material or activity is infringing, or
>    …
>   shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

17 U.S.C. §512(f). Defendant was Harold Walters' authorized licensee for the sticker sheet at the center of this dispute. UMF ¶ 27; D.E. 48-2. Mr. Walters represented to Defendant that he owned a valid copyright registration for the sticker sheet at issue. UMF ¶ 7. Defendant paid Mr. Walters a license fee for permission to use and sell sticker sheets incorporating Mr. Walters' copyrighted work. [D.E. 48-2.] At the time of the alleged take-downs, Defendant had no reason to doubt the veracity or truthfulness of Mr. Walters' representations to Defendant regarding his copyrighted work. UMF ¶¶ 9-10. Thus, Defendant had a reasonable, good faith belief that it was enforcing a valid copyright registered work when it notified Amazon of the presence of sticker sheets that were identical to the ones Defendant was selling under its license from Mr. Walters. There is no evidence that Defendant *knowingly materially misrepresented* that the Plaintiff's identical sticker sheets that it was selling on Amazon were infringing.

---

[1] Defendant addresses Plaintiff's Counts in reverse, because Plaintiff's allegations in support of its §512(f) claim under the Copyright Act are the same ones used to support its preempted Florida state law causes of action.

Defendant's claim under §512(f) is based on speculation, and a misunderstanding of the law. In response to a discovery request asking Plaintiff to state all facts that supports its allegation in Paragraph 32 of the Complaint that "DDI knew that Amazon reinstated Alper Automotive's Amazon listing after each complaint," (D.E. 1, ¶ 32), Plaintiff responded,

> "Alper directs DDI to the responses to Interrogatory Nos. 1 and 16. Further, willful blindness can serve as a substitute for actual knowledge in certain situations. *See Global-Tech Appliances, Inc. v. SEB S.A.,* 563 U.S. 754 (2011). Here DDI took deliberate action not to determine the validity of the copyrighted works at issue, let alone what was actually registered, until challenged by Alper. After the first takedown notice was reinstated or after Alper's counsel made the request for the deposit copy in order to perform a proper analysis, DDI should have had a subjective belief that there was a high probability of no infringement and DDI took the deliberate step of avoiding further information on what was actually registered with the U.S. Copyright Office."

UMF ¶ 42. This interrogatory response makes clear that Plaintiff is relying on a theory of "willful blindness," which also fails here.

All the Courts of Appeal agree that there are two basic requirements for the doctrine of willful blindness. *Global-Tech Appliances, Inc. v. SEB S.A.,* 563 U.S. 754, 756 (2011). "First, the defendant must subjectively believe that there is a high probability that a fact exists." *Id.* Plaintiff's response reveals a fundamental misunderstanding of the standard set forth by the Supreme Court. Plaintiff mistakenly believes that Defendant "should have" possessed a subjective belief of non-infringement simply because opposing counsel requested a file from the Copyright Office that is not publicly available. Even at the time of Plaintiff's counsel's request, Mr. Walters represented to Defendant, and Defendant believed, that the copyright registration he licensed to Defendant was valid. UMF ¶¶ 7-10. The "should have" standard set forth by Plaintiff, that Defendant *should have* believed a particular fact *after an event* is an *objective standard* not a *subjective standard.* A "should have" standard is the same as an objective standard, and "measuring compliance with a lesser 'objective reasonableness' standard would be inconsistent with Congress's apparent intent that the statute protect potential violators from subjectively improper actions by copyright owners." *Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000, 1005 (9th Cir. 2004)

Furthermore, Plaintiff's claim fails even under its own erroneous standard because the record and documentary evidence in this matter directly contradicts Plaintiff's assertions. Plaintiff asserts two events, that "should have" caused Defendant to have a subjective belief that there was a high probability of no infringement. First, "after the first takedown notice was reinstated," and

5

second, "after Alper's counsel made the request for the deposit copy in order to perform a proper analysis." UMF ¶ 42. The record reflects that Defendant did not realize that Plaintiff's listing had been reinstated because Defendant did not receive a counter-notice from Amazon, so had no reason to know Plaintiff's listing was reinstated. UMF ¶ 18. Defendant does not use an automated system to report infringement. UMF ¶ 49. Three of Defendant's employees identified sellers on Amazon selling sticker sheets with the exact same design as what Defendant believed the Walters Copyrights covered. UMF ¶ 50. The employees would then send a list of ASINs to Mr. Yehuda Nourollah, who would then send it to Defendant's counsel. UMF ¶ 51. None of the employees or Defendant's counsel realized that Plaintiff's listing had been reinstated. UMF ¶ 52. Defendant only found out from Mr. Alper in November 2018, after it had submitted all the Takedown Notifications at issue in this matter, that Plaintiff's listing had been reinstated pursuant to a counter-notice. UMF ¶ 53. This information came as a surprise to Defendant. UMF ¶ 54.

Similarly, the record reflects that as to the second event Plaintiff asserts "should have" caused Defendant to have a subjective belief in the high probability of non-infringement, Defendant actually had a subjective belief that the image provided to it by Mr. Walters was the copyright deposit. UMF ¶ 8. Importantly, Defendant believed Mr. Walters had provided it with the copyright deposit and licensed it a valid and enforceable copyright. *Id.* Why would Defendant pay a not-so-insignificant amount of money to Walters to license a copyright it believed was non-enforceable? Furthermore, it is implausible to infer that Defendant "should have" had a subjective belief of non-infringement because Plaintiff's attorney asked about the copyright deposit, which Defendant subjectively believed it provided to Plaintiff's attorney.

Moreover, the record reflects that Defendant subjectively believed the copyright was valid because of numerous conversations with Mr. Walters, and the fact that Defendant, who has been in the after-market car business since 2005, did not see anybody else selling the V7 Design. UMF ¶ 5. Defendant stated concerning the conversations he had with Walters that "[h]e showed me his work. He showed me the documents. He was very passionate about it...he was very, very excited about his work. He just – seemed very, very honest about this and very reasonable." UMF ¶¶ 8-10.

Plaintiff has failed to produce evidence contradicting Defendant's reasonable, good faith belief that Mr. Walter's copyright registration was valid, enforceable, and covered the sticker sheet that was being offered for sale by Plaintiff and others on Amazon. Without contradictory evidence

6

to show that Defendant subjectively believed the copyright was invalid or unenforceable, Defendant's reasonable belief in its validity undermines Plaintiff's §512(f) claim that requires a person to "knowingly materially misrepresents under this section (1) that material or activity is infringing." 17 U.S.C. §512(f).

This Court should reject Plaintiff's attempt to apply an objective standard to its § 512(f) claim, and accordingly, because Plaintiff has failed to meet its burden of showing that there exists a genuine dispute precluding the entry of summary judgment in favor of Defendant on Count V in Plaintiff's Complaint.

### B. Day To Day is Entitled to Summary Judgment on Alper's State Law Claims

Plaintiff's Complaint alleges three state law Counts. Count II for tortious interference with business advantage, Count III for injurious falsehood and product disparagement, and Count IV for violation of the Florida Deceptive and Unfair Trade Practices Act (each state law Count is referred to hereafter as a "State Law Count" or collectively as the "State Law Counts"). The State Law Counts all fail as a matter of law because they are all preempted by the Copyright Act. Even if the State Law Counts were not preempted by the Copyright Act, which they are, they fail individually as well, as discussed more fully below.

#### i. Preemption

The Copyright Act preempts state law causes of action for violations of rights either found in the Act or equivalent to rights found in the Act. *Foley v. Luster,* 249 F.3d 1281, 1285 (11th Cir. 2001) (citing 17 U.S.C. § 301 (a)). Preemption occurs "when compliance with both state and federal [laws] is a physical impossibility or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hillsborough County Fla. v. Automated Med. Labs. Inc*., 471 U.S. 707, 713 (1985) (internal citations omitted); *see also In re Cybernetic Servs., Inc*., 252 F.3d 1039, 1045 (9th Cir. 2001) (internal citation omitted). In § 512(f), Congress provides an express remedy for misuse of the DMCA's safe harbor provisions. *Online Policy Grp. v. Diebold, Inc.,* 337 F. Supp. 2d 1195, 1206 (N.D. Cal. 2004). It appears that Congress carefully balanced the competing interests of copyright holders, ISPs, and the public, by providing immunity subject to relief for any misuse of the statute. *Id.* The DMCA

also provides remedies for posters who believe their material has been taken down incorrectly. (*See* 17 U.S.C. §§ 512(g) and (f)).

Under the Supremacy Clause of the Constitution, federal law "shall be the supreme Law of the Land," meaning that when state laws threaten the supremacy of federal law, they are "preempted" and must give way. *See* U.S. Const. art. VI, cl. 2. Several courts have held that the remedial provisions of the DMCA preempt state claims, such as intentional interference with contract, based on the wrongful use of DMCA takedown notices. "A DMCA Takedown Notification is a creature of a federal statutory regime, and that regime preempts any state law claim based on an allegedly improper DMCA Takedown Notification." *Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. C 10-05696, 2011 WL 2690437, at *4 (N.D. Cal. July 8, 2011); *Lenz v. Universal Music Corp.,* No. C 07-03783, 2008 WL 962102, at *4 (N.D. Cal. Apr. 8, 2008) ("[G]iven that a special provision of the Copyright Act itself regulates misrepresentations in [DMCA Takedown Notifications], [Section 512(f)] constitutes the sole remedy for a customer who objects to its contents and their effects."). These same California cases have been cited with approval by this Court, for reasons other than preemption, in *Disney Enters. v. Hotfile Corp.*, No. 11-20427-CIV-WILLIAMS, 2013 U.S. Dist. LEXIS 172339, at *153 (S.D. Fla. Aug. 28, 2013).

Here, Plaintiff's Complaint makes clear that the State Law Counts are all predicated on, and inextricably tied to, the Takedown Notifications submitted by Defendant to Amazon. First, each Count begins with Plaintiff realleging all the paragraphs that came before it as if "set forth herein." [D.E. 1, ¶¶ 38, 48, 57, 63, and 70.] Importantly, the only conduct Plaintiff complains of is the submission of the Takedown Notifications and the allegedly resulting damages. Second, each of the State Law Counts contains a specific allegation stating the Count is based on the Takedown Notifications. Count II states, "DDI interfered with Alper Automotive's and Amazon's business relationship by submitting multiple faulty reports claiming copyright infringement. [D.E. 1, ¶ 55.] Count III states, "DDI intentionally made a false statement to Amazon that the dash button sticker repair kits Alper Automotive sells on the Amazon platform infringe its alleged rights in the Copyright Registrations," "DDI acted with malice in that it knew that the false statement would induce Amazon to take down Alper Automotive's Amazon listing," and "DDI posted its takedown notice and then asked for Alper Automotive's sales figures." [D.E. 1, ¶¶ 58-60.] Count IV states, "DDI has committed an unfair trade practice by submitting multiple takedown reports of Alper

Automotive's Amazon listing with the knowledge that the Copyright Registrations are invalid." [D.E. 1, ¶¶ 64.]

Based on the foregoing, it cannot be reasonably disputed that Plaintiff's State Law Counts depend solely on the Takedown Notifications. Therefore, because the State Law Counts depend solely on the DMCA Takedown Notifications there is an irreconcilable conflict between state and federal law, and the State Law Counts are preempted by the federal statutory regime and should be dismissed with prejudice. For this reason, this Court should grant summary judgment in favor of Defendant on the State Law Counts.

### ii.  Each Individual State Law Count Fails as a Matter of Law

Even if the Court determines that the State Law Counts are not preempted by Plaintiff's § 512(f) Count, each State Law Count fails as a matter of law independently of preemption.

#### 1.  Plaintiff's Tortious Interference with Business Relations Claim Fails as a Matter of Law

In Florida, the elements of tortious interference with a business relationship are "(1) the existence of a business relationship . . . (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985). A protected business relationship need not be evidenced by an enforceable contract. *Id*. However, "the alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights." *Register v. Pierce,* 530 So. 2d 990, 993 (Fla. 1st DCA 1988).

Analysis of the justification element in an interference claim "requires an examination of the defendant's 'conduct, its motive, and the interests it sought to advance.'" *Security Title Guarantee Corp. v. McDill Columbus Corp.,* 543 So. 2d 852, 855 (Fla. 2d DCA 1989) (quoting *Smith v. Emery Air Freight Corp.,* 512 So. 2d 229, 230 (Fla. 3d DCA 1987). Under Florida law, "no cause of action for intentional interference exists which is the consequence of a rightful action." *Barco Holdings, LLC v. Terminal Investment Corp.,* 967 So. 2d 281, 292-93 (Fla. 3rd DCA Sept. 26, 2007). Florida courts have recognized that the privilege to interfere is a valid defense to a claim for tortious interference only where the interference was not done for some

9

improper purpose. *See Morsani v. Major League Baseball*, 663 So. 2d 653, 657 (Fla. 2d DCA 1995). The right to interfere in contractual relations, as granted to interested parties, is qualified by the obligation to proceed in good faith. This good faith requirement, common to all facets of contract law, disqualifies litigants from asserting the privilege when they have acted with malicious or conspiratorial motives. *See Morsani*, 663 So. 2d at 657; *Yoder v. Shell Oil Co.*, 405 So. 2d 743, 744 (Fla. 2d DCA 1981).

Here, Defendant's submission of the Takedown Notifications was justified because Defendant reasonably believed, in good faith, that Plaintiff's sticker sheet infringed the copyright registrations it licensed from Walters. UMF ¶ 55. Defendant acted to protect its rights in the licensing agreement it signed with Walters. UMF ¶ 56-57. Therefore, Plaintiff has not established, and cannot establish, that Defendant acted improperly or without justification, when it submitted the Takedown Notifications.

### 2. **Plaintiff's Injurious Falsehood and Product Disparagement Claim Fails as a Matter of Law**

Count III is a claim for "Injurious Falsehood and Product Disparagement." [D.E. 1 ¶ 57-62.] While Plaintiff does not state whether these claims are under Florida common law or another statute, it appears that Plaintiff is alleging a common law claim for injurious falsehood, which is identical to its claim for product disparagement.

To prevail on an injurious falsehood claim against a competitor, the plaintiff must identify a specific, unfavorable falsity uttered by the competitor about the plaintiff. Consistent with the Restatement, Florida law requires as an essential element of a claim for injurious falsehood a specific and unfavorable falsity uttered by the defendant about the plaintiff. "Injurious falsehood" is an "umbrella" term that includes "slander of title," "disparagement of property," and "trade libel," *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,* 742 So.2d 381, 386 (Fla. 4th DCA 1999), each of which requires a false statement that disparages the plaintiff. Each "injurious falsehood" tort requires a false statement about the plaintiff. "The gist of injurious falsehood is the intentional interference with another's economic relations." *Falic v. Legg Mason Wood Walker, Inc.,* 347 F. Supp. 2d 1260, 1268 (S.D. Fla. 2004) (internal citations and quotations omitted). To properly plead a claim of injurious falsehood, a plaintiff must allege that the defendant: (1) communicated a falsehood to a third party; (2) knew it to be false upon its utterance; and (3)

10

intended that the communication would influence the third-party to refrain from dealing with the plaintiff. *Leavitt v. Cole,* 291 F. Supp. 2d 1338, 1345 (M.D. Fla. 2003).

Here, Plaintiff cannot meet its burden under the second element of a claim for injurious falsehood. Defendant reasonably believed, in good faith, that Plaintiff was liable for copyright infringement when it submitted the Takedown Notifications. The record reflects Defendant's surprise when it found out that Walters had provided Defendant, on multiple occasions, with a design that was not the one Walters had registered with the Copyright Office. UMF ¶¶ 31-33.

### 3. **Plaintiff's Florida Deceptive and Unfair Trade Practices Claim Fails as a Matter of Law**

Under Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), a claimant must satisfy three elements to allege a viable claim. A claim under FDUTPA requires: "(1) a deceptive act or unfair trade practice; (2) causation; and (3) actual damages." *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013); *see also Intercoastal Realty, Inc. v. Tracy*, 706 F. Supp. 2d 1325, 1333 (S.D. Fla. 2010). Failure to meet any of the elements results in dismissal. *See, e.g. Plain Bay Sales, LLC v. Gallaher,* No. 9:18-CV-80581, 2020 U.S. Dist. LEXIS 6315, 2020 WL 202960, at (S.D. Fla. Jan. 14, 2020).

The purpose of FDUTPA is to prevent an unfair practice "that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," while a deceptive act "occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *See Sandshaker Lounge & Package Store LLC v. RKR Beverage Inc,* No. 317CV00686MCRCJK, 2018 U.S. Dist. LEXIS 224519, 2018 WL 7351689, at *6 (N.D. Fla. Sept. 27, 2018) (*citing PNR, Inc. v. Beacon Prop. Mgmt, Inc.,* 842 So. 2d 773, 777 (Fla. 2003)).

In order to satisfy a claim under FDUTPA, there must be *actual* damages, as opposed to *consequential* damages. *See Zamber v. Am. Airlines, Inc.,* 282 F. Supp. 3d 1289, 1298 (S.D. Fla. 2017); *Casa Dimitri Corp. v. Invicta Watch Co. of Am., Inc.*, 270 F. Supp. 3d 1340, 1352 (S.D. Fla. 2017). Florida law is well settled that consequential damages are barred under the FDUTPA statute. *See, e.g. Diversified Mgmt. Sols., Inc. v. Control Sys. Research,* Inc., No. 15-81062-CIV, 2016 U.S. Dist. LEXIS 189771, 2016 WL 4256916, at *5 (S.D. Fla. May 16, 2016) (finding that actual damages do not include "consequential damages"); *Orkin Exterminating Co. v. Petsch*, 872

So. 2d 259, 263 (Fla. 2d DCA 2004) (noting that FDUTPA "permits a consumer to recover only the diminished value of the services received," and not "special, consequential, and incidental damages").

"It remains well-settled in Florida that consequential damages in the form of lost profits are not recoverable under FDUTPA." *Plain Bay Sales, LLC v. Gallaher*, No. 9:18-CV-80581, 2020 U.S. Dist. LEXIS 6315, 2020 WL 202960, at *4 (S.D. Fla. Jan. 14, 2020) ("But such alleged damages are lost profits, not actual damages, and consequential damages such as loss profits are not recoverable under FDUTPA."); *HGI Assocs., Inc. v. Wetmore Printing Co.*, 427 F.3d 867, 878 (11th Cir. 2005) ("Lost profits typically fall under the category of consequential damages."). "Lost profits are a quintessential example of consequential damages . . . Additionally, harm in the manner of competitive harm, diverted or lost sales, and harm to the goodwill and reputation are consequential damages." *ADT LLC v. Vivint, Inc.*, No. 17-CV-80432, 2017 U.S. Dist. LEXIS 123516, 2017 WL 5640725, at *5 (S.D. Fla. Aug. 3, 2017) (dismissing FDUTPA count where past lost profits were the only alleged damage); *Diversified Mgmt. Sols., Inc. v. Control Sys. Research, Inc.*, No. 15-81062-CIV, 2016 U.S. Dist. LEXIS 189771, 2016 WL 4256916, at *6 (S.D. Fla. May 16, 2016) ("The substantive law of Florida, as it currently stands, leads to the conclusion that lost profits are consequential damages, and, thus, not recoverable under FDUTPA.").

Nor are reputational harm or "stigma damages" recoverable under FDUTPA. See Casa Dimitri, 270 F. Supp. 3d at 1352 (dismissing FDUTPA claim where plaintiff's "harmed goodwill" damage theory was consequential and "expressly not recoverable under the FDUTPA"); *Krupa v. Platinum Plus, LLC*, No. 8:16-cv-3189-T-33MAP, 2017 U.S. Dist. LEXIS 39261, 2017 WL 1050222, at *7 (M.D. Fla. Mar. 20, 2017) (same); *BPI Sports, LLC v. Labdoor, Inc.*, 2016 U.S. Dist. LEXIS 23033, 2016 WL 739652, at *6 (S.D. Fla. Feb. 25, 2016) (Bloom, J.) (dismissing FDUTPA claim where plaintiff's allegations of "competitive harm, diverted or lost sales, and harm to the goodwill and reputation" of plaintiff were improper consequential damages); *Rollins, Inc. v. Butland*, 951 So. 2d 860, 870 (Fla. 2d DCA 2006) ("the recovery afforded under FDUTPA does not include diminution in value or stigma damages"); *Clear Marine Ventures, Ltd. v. Brunswick Corp.,* No. 08-22418, 2010 U.S. Dist. LEXIS 11949, 2010 WL 528477, at **3-4 (S.D. Fla. Feb. 11, 2010) (Torres, Mag. J.) (same).

Plaintiff's FDUTPA claim fails as a matter of law for two reasons. First, Plaintiff cannot satisfy its burden under the first element of the Count – deceptive act or unfair trade practice.

12

Plaintiff did not allege in its Complaint, or produce any evidence in discovery, that a consumer was misled to the consumer's detriment.

Second, Plaintiff cannot carry its burden under the third element - actual damages - because Plaintiff has only plausibly alleged lost profits. Plaintiff's Complaint only discusses consequential damages in the form of lost profits, and "other losses, such as losses to Alper Automotive's customer base, goodwill, and reputation, are unquantifiable." [D.E. 1 ¶34, 35, and 72.] In its Amended Initial Disclosures dated June 13, 2019, Plaintiff states under article C., "Plaintiff alleges as recoverable damages those specific lost profits as a result of Defendant's actions in taking down Plaintiff's Amazon listing. Plaintiff is also requesting treble damages and punitive damages based on the willful, intentional, and wrongful nature of Defendant's acts as well as costs and attorneys' fees pursuant to 17 U.S.C. § 512(f). A full computation is premature at the moment as discovery is ongoing and will be partially determined by the financial disclosures made by Defendant. A computation of each category of damages claimed will be provided in due course." UMF ¶ 46

In response to a discovery request asking Plaintiff to support its allegation in Paragraph 35 of its Complaint regarding the "other" losses, Plaintiff stated:

"Alper's Amazon listing was down multiple days due to DDI's actions. As can be seen in Alper's financial documents, e.g. Alper_000061, Alper made multiple sales of the dash button sticker repair kit a month at non-regular intervals. The randomness of the timing of these sales means that sales that could have been made while the Amazon listing was down were not made. A customer seeking Alper's product would have been met with an empty listing due to the takedowns and resulted in a loss to Alper's customer base. It is unknown how many of these customers were lost due to DDI's actions. Similarly, Alper's goodwill and reputation were harmed because (1) return customers would have been met with an empty listing and could have thought any number of negative thoughts about Alper such as going out of business or intellectual property infringement and (2) Alper's Amazon seller account health was adversely impacted because complaints were posted and remained on Alper's account until the listing got reinstated. DDI's action nearly led to the restriction or removal of selling privileges for Alper." UMF ¶ 41.

Interestingly, in his deposition, Gregg Alper the owner of Plaintiff, directly contradicted the above discovery response. Alper was asked "whether having those complaints on your Amazon Account Health Dashboard affected your account?" To which Alper responded that he "can't answer

13

specifically if it affected my account." UMF ¶ 47. That's a far cry from claiming that Defendant's action "nearly led to the restriction or removal of selling privileges for Alper." When Alper was asked what Plaintiff meant by "loss to goodwill," Alper asserted that his response was covered by the attorney-client privilege and refused to answer. When asked what harm Defendant allegedly caused Plaintiff, Alper responded "lost sales, time and money spent to get the listings reinstated, as well as time and money involved with this case." UMF ¶ 48.

Additionally, Plaintiff's expert witness hired to opine on damages in this case only discusses and analyses lost profits in his Expert Report. In other words, there is not dispute that Plaintiff's only damages were consequential damages.

Therefore, this motion should be granted and Count IV dismissed from the Complaint.

### C.   Day To Day is Entitled to Summary Judgment on Plaintiff's Declaratory Relief Claim

Federal courts may grant declaratory relief only in the case of an "actual controversy." *Burke v. Barnes,* 479 U.S. 361, 364 (1987). A request for declaratory relief should be dismissed as moot if the challenged action has no continuing adverse effects on the parties. *See Super Tire Engineering Co. v. McCorkle* 416 U.S. 115, 122 (1974). The test for determining whether a complaint seeking declaratory relief survives a mootness challenge is whether there exists "a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* Ordinarily, a controversy is not sufficiently immediate or real where the parties' dispute is only hypothetical, abstract, academic, or moot. *See Aetna Life Ins. Co. of Hartford Conn., v. Haworth,* 300 U.S. 227, 240-41 (1937).

At a minimum, the above requirements mean that "a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision. *Lewis v. Cont'l Bank Corp.,* 494 U.S. 472, 477 (1990). Moreover, this "actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona,* 520 U.S. 43, 67 (1997) (quoting *Preiser v. Newkirk,* 422 U.S. 395, 401 (1975).

In this case, the record reflects that Defendant has not submitted a Takedown Notification against Plaintiff's listing for copyright infringement based on the Walter Copyrights since November 2018, and Defendant has no intention of submitting any further Takedown Notification

14

based on the Walters Copyrights. UMF ¶ 25. While this request to dismiss Count I may seem like it will run afoul of the voluntary cessation doctrine, that doctrine does not apply here because "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonable be expected to recur." *Friends of Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Defendant has stated that it has not, and it does not intend to, submit any Takedown Notifications based on the Walters Copyrights, and Alper admitted in his deposition that Plaintiff no longer sells the sticker sheet on his listing any longer, so it is implausible for the allegedly wrongful behavior to recur and Count I should be dismissed.

## IV. CONCLUSION

The record evidence does not support Plaintiff's speculation that Defendant made material misrepresentations to Amazon when it submitted – through its counsel – the Takedown Notifications in question, which resulted in Plaintiff's listing on Amazon being taken down for a total of 44 days. Plaintiff's theory of liability is based purely on conjecture. Furthermore, Plaintiff's State Law Counts, Counts II, III, and IV, are preempted by Plaintiff's § 512(f) claim since the claims are based on the exact same Takedown Notifications, and § 512(f) allows for the recovery of the same damages as the state law claims.

Even if the Court finds that the State Law Counts are not preempted, they each fail for independent reasons. Count II fails because Defendant was justified in submitting the Takedown Notifications, Count III fails because truth is a complete defense and Defendant had a good faith belief that Plaintiff's listing infringed on its copyrights, and Count IV fails because Plaintiff has not suffered any actual damages. Similarly, Count V fails because there is no longer a case or controversy since Defendant has no intention of submitting any more Takedown Notifications based on the Walters Copyrights, and Plaintiff no longer sells the item.

As a result, Defendant respectfully requests the Court enter final summary judgment in Defendant's favor and against Plaintiff as to all five Counts in Plaintiff's Complaint. In the event the Court declines to grant final summary judgment on all Counts, Defendant respectfully requests the Court enter partial summary judgment as to Counts II, III, IV, and V.

DATED:    August 20, 2020

        Respectfully Submitted,

        */s/Aryeh Kaufman*
        Aryeh Kaufman, Esq.
        *Admitted Pro Hac Vice*

        Law Office of Aryeh Kaufman
        5482 Wilshire Blvd., Suite 1907

        Los Angeles, California 90036
        Tel: (323) 943-2566
        Fax: (213) 402-8598
        Email: aryeh@akaufmanlegal.com


        */s/William R. Trueba, Jr.*
        William R. Trueba, Jr., Esq.
        Florida Bar No. 117544
        wtrueba@lex188.com
        Roberto M. Suarez, Esq.
        Florida Bar No. 95762
        rsuarez@lex188.com
        Darlene Barron
        Florida Bar No. 108873
        dbarron@lex188.com
        TRUEBA & SUAREZ, PLLC
        9150 S. Dadeland Blvd., Suite 1008
        Miami, Florida 33156
        Telephone:    (305) 482-1001
        Facsimile:    (786) 516-2826

        *Attorneys for Defendant,*
        Day To Day Imports, Inc.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 20, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: s/William R. Trueba, Jr.            .
William R. Trueba, Jr., Esq.
Florida Bar No. 117544

## SERVICE LIST

*Alper Automotive, Inc. v. Day to Day Imports, Inc.*
CASE NO. 9:18-cv-81753-cv-BRANNON
United States District Court, Southern District of Florida

| | |
|---|---|
| Cole Younger Carlson, Esq.<br>Florida Bar No. 112863<br>Cole.Carlson@gray-robinson.com<br><br>Gray Robinson P.A.<br>401 E Jackson Street, Suite 2700<br>Tampa, Florida  33602<br>Phone: 813 273-5000<br><br>*Attorneys for Plaintiff*<br><br>**Via CM-ECF** | Aryeh Kaufman, Esq.<br>*Admitted Pro Hac Vice*<br>aryeh@akaufmanlegal.com<br><br>Law Office of Aryeh Kaufman<br>5482 Wilshire Blvd., Suite 1907<br>Los Angeles, California 90036<br>Tel: (323) 943-2566<br>Fax: (213) 402-8598<br>Email: aryeh@akaufmanlegal.com<br><br><br>William R. Trueba, Jr., Esq.<br>Florida Bar No. 117544<br>wtrueba@lex188.com<br>Roberto M. Suarez, Esq.<br>Florida Bar No. 95762<br>rsuarez@lex188.com<br>Darlene Barron<br>Florida Bar No. 108873<br>dbarron@lex188.com<br>TRUEBA & SUAREZ, PLLC<br>9150 S. Dadeland Blvd., Suite 1008<br>Miami, Florida 33156<br>Telephone:     (305) 482-1001<br>Facsimile:     (786) 516-2826<br><br>*Attorneys for Defendant*<br>Day To Day Imports, Inc.<br><br>**Via CM-ECF** |