UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-81753-Civ-Brannon

ALPER AUTOMOTIVE, INC.
d/b/a AA IGNITION,
A Florida Corporation,

    Plaintiff,

v.

DAY TO DAY IMPORTS, INC.,
A California Corporation,

    Defendant.

_____/

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DE 88]**

THIS CAUSE is before the Court upon Defendant Day to Day Imports, Inc. ("DDI") Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment. [DE 88]. Plaintiff Alper Automotive, Inc. d/b/a AA Ignition's ("Alper") responded [DE 96], and DDI replied. [DE 102]. With leave of Court, Alper sur-replied. [DE 106]. Having reviewed the parties' submissions and the applicable law, DDI's Motion is **GRANTED in part** and **DENIED in part** for the reasons that follow.

**I.    LEGAL STANDARDS**

Federal Rule of Civil Procedure 56(a) states:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

1

Fed. R. Civ. P. 56(a).

The moving party bears the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Tana v. Dantanna's*, 611 F.3d 767, 772 (11th Cir. 2010); *Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the evidence could lead a rational jury to find for the non-moving party. *Baby Buddies, Inc. v. Toys "R" Us, Inc.*, 611 F.3d 1308, 1314 (11th Cir. 2010). It is "material" if it might affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1315 (11th Cir. 2007).

## II.   FACTUAL BACKGROUND[1]

DDI first started selling a product bearing the subject design[2] on Amazon around September 11, 2016. [DE 97-7 at 46:12-47:11]. Harold Walters submitted a Digital Millennium Copyright Act ("DMCA") takedown notice, reporting copyright infringement against DDI's Amazon listing. [DE 67-1 ¶ 2]. Thereafter, DDI met Mr. Walters on June 11, 2017 when Mr. Walters informed DDI that he created the design on the sticker sheet that DDI was selling, including, inter alia, the truck icons found on the top row, as well as the order and arrangement of the icons. [*Id.* ¶ 3].

---

[1] These background facts are drawn from the parties' Rule 56.1 submissions and the record evidence. These facts are either: (1) asserted and evidentially supported at least to some degree by one party and not rebutted by the other side; (2) otherwise not in genuine dispute; (3) asserted and evidentially supported by one side to such an extent, or in such a manner, that they are credited by this Court even if rebutted to some extent by the other side; or (4) subject to judicial notice.

[2] *See* [DE 29 at 10 ¶ 13].

2

DDI sells its auto accessories under the "Oxgord" trademarks, and so DDI referred the matter to Oxgord Incorporated for evaluation of Mr. Walters' claims. [*Id.* ¶ 4]. Oxgord Incorporated is owned by Yehuda Nourollah, who has been in the aftermarket car accessories business since around 2005. [*Id.* ¶ 5.]

Oxgord Incorporated and Mr. Walters began negotiating for a license for his copyrighted works. [*Id.* ¶ 9.] During those negotiations, Mr. Walters represented that he had a valid and enforceable copyright registration on a design substantially similar to DDI's sticker sheet design. [*Id.* ¶ 10]. Mr. Nourollah obtained a copies of Mr. Walters registrations from him, and Mr. Walters showed Mr. Nourollah his work, i.e. what Walters claimed he deposited with the Copyright Office. [*Id.* ¶ 11; DE 97-1 at 77:3-25; 78:1-15; 96:4-19]. Mr. Nourollah had multiple conversations with Mr. Walters concerning the copyrighted design. [DE 89-1 at 96:4-19]. According to Mr. Nourollah, Mr. Walters came across as a very, very honest guy, who was policing his rights. [*Id.* at 96:4-19; 124:19-25; 125:1-3]. DDI did not request a certified copy of the copyright deposit from the Copyright Office; instead, DDI's counsel asked Mr. Walters what he had submitted to the Copyright Office and Mr. Walters described the design to him. [DE 103-1 ¶ 18-32; DE 89-1 at 78:4-6]. DDI entered into a licensing agreement with Mr. Walters for the design associated with Copyright Registration Nos. VAU1-317-214 and VAU001299058. [DE 89-1 at 102:14-103:3].

At first Mr. Walters would submit takedown notices on DDI's behalf to Amazon. [DE 67-1 ¶ 12]. At some point it became too burdensome for Mr. Walters to submit the takedown notices, so he requested that DDI submit its own takedown notices. [*Id.* ¶ 13]. Due to the large number of sellers offering to sell a sticker sheet design identical to the subject design, when DDI submitted takedown notifications to Amazon, it always included at least a dozen sellers. [*Id.* ¶ 14].

On May 8, 2018, Alper's Amazon listing was one of the listings that was reported as infringing. [*Id.* ¶ 15]. Thereafter, on May 17, 2018, Alper's counsel reached out to DDI's counsel to discuss the copyright claims on behalf of Alper. [*Id.* ¶ 16]. No resolution was reached at that time between the parties. [*Id.* ¶ 17]. DDI was aware of Alper's Amazon Standard Identification Number ("ASIN") as of May 17, 2018. [DE 89-1 at 112:12-17].

In response to a request for the identification of his client and what the issue was, DDI's counsel stated

> I'd tell you anyway, of course. I represent the exclusive licensee of the attached copyright. Your client's item is an exact replica of the copyrighted work. Can you find out what your client's sales were so we can come to a quick resolution on the infringement, save both our clients litigation expenses (also if your client only started selling after September 2017, they will be liable to attorney's fees as well), and we can execute a confidentiality agreement if you would like as well.

[DE 89-1 at 123:1-25]. When asked for a copy of what was deposited at the Copyright Office, DDI's counsel responded:

> My client is the exclusive licensee, so my guys did not deposit anything with the copyright office. I called the copyright office recently to ask if they can send a copy to me and they said I have to make a regular request through the normal channels. The licensor showed me the work he filed and it is identical to what your client is selling. I have no reason not to believe him. Feel free to request the deposit from the copyright office though.

[*Id.* at 123:1-124:14].

DDI submitted DMCA takedown notices against Alper's Amazon listing on at least four separate occasions—May 8, August 2, November 1, and November 19. [DE 67-1 ¶ 15, 21, 24]. Alper submitted a counter-notice after each takedown notice was sent, stating that a mistake had been made because no infringement of protectable material had occurred. [DE 97-8 ¶ 9-13]. Each time the listening was then reinstated by Amazon. [*Id.* ¶ 9-13]. As part of the November 19 takedown notice, DDI's counsel wrote: "Many of these sellers are ones that have already been

taken down pursuant to previous DMCA notices, but they are back up somehow." [DE 103-1 ¶ 10; DE 100 at 27].

Alper reached out to DDI's counsel on December 5, 2018 and informed DDI it had spoken with two different attorneys who both informed it that there was no infringement and the copyright was invalid. [DE 97-8 ¶ 5]. The correspondence chain also included the correspondence from Amazon that the November 19 DMCA takedown had been reinstated. [*Id.*].

On December 18, 2018, counsel for Alper reached out to counsel for DDI requesting the name of the exclusive licensee doing the takedowns on Amazon and a copy of the deposit before close of business on December 21, 2018. [DE 67-1 ¶ 27]. Counsel for DDI informed counsel for Alper who the exclusive licensee was, and that there was a confidentiality clause in the licensing agreement preventing the release of the licensing agreement between the copyright owner, Mr. Walters, and DDI. [DE 67-1 ¶ 28].

On December 23, 2018, Alper received a notice from Amazon that the listing had again been taken down. [DE 97-8 at 48]. Alper asserts that this is a result of another takedown notice by DDI. Specifically, that DDI submitted another takedown on or after December 16, 2018, which resulted in Alper's listing being taken down on or before December 23, 2018. [DE 97-8 ¶ 13]. DDI's position is that it has not submitted takedown notices to Alper's listing since the November 19 takedown notice. [DE 67-1 ¶ 26].

This action was filed on December 27, 2018. [DE 67-1 ¶ 29; DE 1]. The complaint seeks a declaratory judgment that the copyright rights related to a sticker sheet were not infringed and not valid. [*Id.*]. The complaint also alleged tortious interference with business relations, injurious falsehood and product disparagement under Florida and violation of the Florida Deceptive and

Unfair Trade Practices Act, and misrepresentation of copyright infringement under 17 U. S. C 512(f). [DE 1].

On September 9, 2019, DDI answered and asserted their counterclaim for copyright infringement based on Walters' representations have he had copyright registrations on his sticker sheets. [DE 29]. DDI also joined Walters as a third-party plaintiff. [*Id.*]. At some point, it was apparent that Walters, had registered the wrong sticker sheet that formed the basis for the counterclaim. At least one application for copyright registration was made on or before September 13, 2019, rejected September 23, 2019, and which Alper was not made aware of until at least December 2019. [DE 48-4]. Alper filed its answer and affirmative defenses on September 16, 2019. [DE 34].

On January 22, 2020, the Court dismissed claims and counterclaims between Alper and Walters with prejudice on the parties' stipulated motion [DE 53], and subsequently granted DDI's Motion for Voluntary dismissal with Prejudice of its Counterclaims. [DE 65].

On July 13, 2020, Alper's Motion for Partial Summary Judgment was granted because the truck recirculation icon and the overall arrangement are uncopyrightable and copying those elements cannot be infringement as a matter of law. [*Id.*].

### III.   DISCUSSION

DDI seeks summary judgment in its favor. DDI argues that it is entitled to summary judgment on Count V (misrepresentation of copyright infringement under the DMCA). DDI asserts that Counts II-IV (tortious interference with business relations; injurious falsehood and product disparagement; and Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), respectively), the state law claims, are all preempted by Count V. Alternatively, DDI argues each state law claim fails individually as a matter of law. Finally, DDI contends that Count I (declaratory relief) is moot.

**1.      Count 1: Declaratory Judgment**

DDI argues that Alper's declaratory judgment count is moot because DDI has not submitted a takedown notification against Alper's listing since 2018 and DDI has no intention of submitting any further takedown notifications based on Mr. Walters' copyrights. However, as Alper points out, this claim as been adjudicated. In the complaint, Alper requested a declaration that Alper did not infringe the registrations at issue and that the registrations as issue were invalid. The Court ruled on Alper's Motion for Summary Judgment on copyright infringement and found that the copyright registrations at issue were invalid and therefore not infringed.

**2.      Count V: Misrepresentation of Copyright Infringement Under DMCA**

DDI argues that summary judgment should be granted in its favor because "[t]here is no evidence that [DDI] *knowingly materially misrepresented* that the [Alper's] identical sticker sheets that it was selling on Amazon were infringing." [DE 88 at 4] (emphasis in the original). Moreover, the undisputed facts show that "[DDI] had a reasonable, good faith belief that it was enforcing a valid copyright registered work when it notified Amazon of the presence of sticker sheets that were identical to the ones [DDI] was selling under its license from Mr. Walters." *Id.*

Alper argues that 1) DDI had actual knowledge that Alper's Amazon listing had been reinstated before submitting at least one DMCA takedown notice (the contested December takedown); 2) had DDI been acting in good faith, it would have found out that the listing had been reinstated, but it did not; and 3) had DDI been acting with reasonable care of diligence, it would have sought out the deposit copy associated with the registrations before sending out any DMCA takedown notice.

The DMCA relieves internet service providers of liability for storing users' content if, in addition to other requirements, the provider "expeditiously" removes or disables content after

receiving a takedown notification from a copyright holder that it is infringing. 17 U.S.C. § 512(c). Section 512(c)(3)(A) outlines the content that such a takedown notification must contain. § 512(c)(3)(A). Among other things, a takedown notification must include 1) a statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law; and 2) a statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed. § 512(c)(3)(A)(v), (vi).

If a party "knowingly materially misrepresents" that the material or activity it complained of is infringing, it may be subject to liability for "any damages, incurred by the alleged infringer by any copyright owner . . . who is injured by such misrepresentation." *Id.* § 512(f).[3] The Eleventh Circuit recently considered for the first-time misrepresentation claims under § 512(f). *See Johnson v. New Destiny Christian Ctr. Church, Inc.*, 19-11070, 2020 WL 5289881, at *4 (11th Cir. Sept. 4, 2020). In evaluating § 512(f), the Eleventh Circuit noted that a copyright holder must consider whether potentially infringing material is fair use, as defined in 17 U.S.C. § 107, before issuing a

---

[3] Title 17, Section 512 provides in relevant part:

> (f) Misrepresentations.—Any person who knowingly materially misrepresents under this section—
> (1) that material or activity is infringing, or
> (2) that material or activity was removed or disabled by mistake or misidentification, shall be liable for any damages, including costs and attorneys' fees, incurred by the alleged infringer, by any copyright owner or copyright owner's authorized licensee, or by a service provider, who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing, or in replacing the removed material or ceasing to disable access to it.

takedown notice and further noted that failure to do so constitutes misrepresentation under § 512(f). *Id.*

Where a copyright holder has a subjective good faith belief that the use in question is not authorized and not fair use, the copyright holder has a complete defense to claims pursuant to § 512(f). *Id.* However, merely paying service to the consideration of fair use by claiming it formed a good faith belief is insufficient to escape liability when there is evidence to the contrary. *Lenz v. Universal Music Corp.*, 815 F.3d 1145, 1155 (9th Cir. 2016) (holding that the willful blindness doctrine may be used to determine whether a copyright holder "knowingly materially misrepresent[ed]" that it held a "good faith belief" the offending activity was not a fair use); *see also Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 35 (2d Cir. 2012) ("[T]he willful blindness doctrine may be applied, in appropriate circumstances, to demonstrate knowledge or awareness of specific instances of infringement under the DMCA.").

Whether DDI misrepresented copyright infringement under § 512(f) turns on whether DDI had a subjective good faith belief that Alper was infringing on their copyright when they sent the DMCA takedown notices. DDI's summary judgment argument this turns on whether the facts viewed in Alper's favor leaves a genuine issue of DDI's subjective good faith. Under the circumstances of this case, the Court finds that DDI's subjective good faith belief that Alper was infringing is a question for the trier of fact to decide, and summary judgment is improper on Count V.

It is undisputed that Alper's listing was taken down on five occasions, but the parties dispute if DDI submitted five takedowns notifications, or its admitted four. Whether DDI submitted the December takedown notice when it had knowledge that Alper's listing had been reinstated is a

9

genuine issue of material fact regarding DDI's subjective good faith. Even if DDI did not submit another takedown notice after its November 19 takedown notice, in its November 19 notice, DDI admits that it was aware that at least some of the various sellers subject to the takedown notices had been reinstated by Amazon. What DDI knew and what it did with that knowledge presents a genuine issue of DDI's good faith in submitting its DMCA takedowns against Alper's listing. DDI's pre-filing investigation of Alper's fair use is at issue on these facts and whether it was in good faith to rely on Mr. Walters' representations without seeking out the deposit copy associated with the registrations. In examining the evidence in a light most favorable to the non-moving party, in this case Alper, there is a genuine issue of material fact concerning DDI's subjective belief that Alper was infringing on their copyright when they submitted the DMCA takedown notices such that summary judgment on Count V is denied.

### 3. Counts II-IV: State Law Claims

DDI argues that Counts II-IV are all preempted by the Copyright Act and should be dismissed. And even if these counts are not preempted, DDI argues that it is entitled to summary judgment in its favor on each of the state law claims.

Alper argues that preemption is an affirmative defense that must be pled and proven, and because DDI did not include preemption as part of its answer, the defense is waived. Alper alternately argues that even if the preemption defense is not waived, the state law claims are not preempted when the use of a platform's policy forms at least part of the basis of the claims, even when submitting a DMCA takedown notification.

To begin, DDI's failure to identify the defense of preemption in its answer is not an absolute bar to raising it now on summary judgment. The purpose of requiring that an affirmative defense be pled in the answer is to provide notice to the opposing party of the

existence of certain issues. *Bergquist v. Fid. Info. Services, Inc.*, 197 Fed. Appx. 813, 814 (11th Cir. 2006). The Eleventh Circuit has continuously recognized that a defendant does not waive an affirmative defense if the earlier omission from responsive pleadings does not prejudice the plaintiff. *Edwards v. Fulton County, Ga.*, 509 Fed. Appx. 882, 887–88 (11th Cir. 2013) (collecting cases). The Eleventh Circuit has also concluded that "an omission of an affirmative defense in responsive pleadings does not prejudice a plaintiff when the defendant first raises the defense in a pretrial motion or discussion and the subject matter of discovery suggests that the defendant will rely on the defense." *Id.* Here, DDI first raised the defense in the instant Motion, which gave Alper sufficient opportunity to respond to the defense in its response, and sur-reply. Because there is no prejudice to Alper, DDI has not waived the defense of preemption. Accordingly, the Court will consider the merits of DDI's preemption argument. *Id.*; *see also Apex Oil Co. v. Archem Co.*, 770 F.2d 1353, 1356 n.3 (5th Cir. 1985) (although waiver was not pleaded, summary judgment was proper on that issue).

There is a two-step analysis to determine whether a state common law or statutory claim is preempted by the Copyright Act. *Crow v. Wainwright*, 720 F.2d 1224, 1225-26 (11th Cir. 1983). The first step in the analysis is to determine if the rights at issue fall within the "subject matter of copyright" as set forth in sections 102 and 103 of the Act. *Id.* The second step is to determine whether the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in section 106. *Id.*; *see also Lipscher v. LRP Publ'ns, Inc.,* 266 F.3d 1305, 1318 (11th Cir. 2001).

With respect to the second step of the analysis, rights within the general scope of copyright are those that prohibit reproduction, performance, distribution, or display of a work. 17 U.S.C. § 106. The general scope of copyright is subject to fair use. 17 U.S.C. § 107. In order to determine

11

whether the rights asserted in a claim are equivalent to the exclusive rights of copyright, the Eleventh Circuit employs the "extra element" test. *Foley v. Luster*, 249 F.3d 1281, 1285 (11th Cir. 2001). Under the test, a state law claim is not preempted when "the extra element changes the nature of the action so that it is *qualitatively* different from a copyright infringement claim." *Id.* (emphasis in original).

The Court finds that the rights at issue fall within the subject matter of copyright. Congress provided an express remedy for misuse of the DMCA's safe harbor provisions, and the DMCA provides remedies for posters who believe their material has been taken down incorrectly. 17 U.S.C. §§ 512(g), (f); *see also Amaretto Ranch Breedables, LLC v. Ozimals, Inc.*, No. C 10-05696, 2011 WL 2690437, at *4 (N.D. Cal. July 8, 2011) ("A DMCA Takedown Notification is a creature of a federal statutory regime, and that regime preempts any state law claim based on an allegedly improper DMCA Takedown Notification."); *Lenz v. Universal Music Corp.*, No. C 07-03783, 2008 WL 962102, at *4 (N.D. Cal. Apr. 8, 2008) (dismissing plaintiff's claim for intentional interference with contractual relations based on field preemption pursuant to the DMCA takedown notice).

Alper asserts its state law claims survive because use of Amazon's seller policy formed part of the basis of its state law claims. However, Alper's complaint is insufficient in this regard. All of Alper's state law claims assert the same conduct which forms the basis of Alper's claim under the DMCA. Alper now points to paragraph 20 in its complaint, which alleges generally that "[i]n order to sell products on Amazon, an entity must agree to the Amazon Services Business Solutions Agreement and enter into a business relationship with Amazon[.]" However, each of the state law counts contains specific allegations that the count is based on improper takedown

notifications.  Merely incorporating all prior paragraphs into each count, is insufficient to allege that Amazon's seller policy is part of the basis of its state law claims.[4]

The Court finds that any "extra element" in Alper's state law claims do not change the nature of the action such that it is qualitatively different its claim under the Copyright Act.  Each count depends solely on the alleged improper takedown notifications.  The Court will address each state law count in turn.

First, to establish a claim for tortious interference with a business relationship, a plaintiff must show: 1) the existence of a business relationship; 2) knowledge of the relationship on the part of the defendant; 3) an intentional and unjustified interference with the relationship by the defendant; and 4) damage to the plaintiff as a result. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994).  Alper's complaint alleges that DDI intentionally interfered with the relationship between Alper and Amazon by submitting multiple faulty takedown notices claiming copyright infringement.  Thus, the right to be free from interference with business relations, in this instance, is infringed by the act of material misrepresentations knowingly made in submitting DMCA takedown notifications.  There is no "extra element" that qualitatively distinguishes this state law claim from the claim under the Copyright Act.

Next, to establish a claim for injurious falsehood and product disparagement, a plaintiff must allege that the defendant: 1) communicated a falsehood to a third party; 2) knew it to be false

---

[4] By way of example, Count II for tortious interference with business relations begins at paragraph 48, all preceding facts and allegations from the complaint are collectively reincorporated into the tortious interference claim.  The specific allegations in paragraphs 49 through 56 sufficiently states a claim without the reference to paragraph 20.  The Court is then left to determine which other factual allegations are material to this count to determine if the claim is preempted or if the claim should be decided on summary judgment.

upon its utterance; and 3) intended that the communication would influence the third-party to refrain from dealing with the plaintiff. *Leavitt v. Cole,* 291 F. Supp. 2d 1338, 1345 (M.D. Fla. 2003).[5] Alper's complaint alleges that DDI acted with malice in that it knew the false statement would induce Amazon to take down Alper's Amazon listing. Again, there is no "extra element" that qualitatively distinguishes this state law claim from Alper's claim under the Copyright Act.

Finally, to establish a claim under FDUTPA, a plaintiff must show: 1) a deceptive or unfair practice; 2) causation; and 3) actual damages. *In re Florida Cement and Concrete Antitrust Litigation*, 746 F. Supp. 2d 1291 (S.D. Fla. 2010); *see also Tecnoglass, LLC v. RC Home Showcase, Inc.*, 301 F. Supp. 3d 1267 (S.D. Fla. 2017). Alper's complaint alleges that DDI employed an unfair trade practice by submitting multiple takedown reports of Alper's Amazon listing with the knowledge that the Copyright Registrations are invalid. As such, the only unfair or deceptive practice is the same conduct which forms the basis of Alper's copyright claim, and there is no "extra element" to qualitatively distinguish the FDUTPA claim from the claim under the Copyright Act.

Because Alper's state law counts depend solely on DDI's DMCA takedown notifications, the state law counts are preempted by the Copyright Act and are dismissed.

## IV. CONCLUSION

For the reasons stated above, it is ORDERED and ADJUDGED that

1. DDI's Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment [DE 88] is **GRANTED in part** and **DENIED in part**.

2. Summary Judgment on Count V is **DENIED**.

---

[5] "A group of torts recognized under the collective title of 'injurious falsehood' are often interchangeably called slander of title, disparagement of property, or trade libel." *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So. 2d 381, 386 (Fla. 4th DCA 1999). "The gist of the tort of injurious falsehood is the intentional interference with another's economic relations." *Id.*

3. Summary Judgment on Counts II-IV is **GRANTED** and Counts II-IV are **DISMISSED** as preempted by the Copyright Act.

**DONE AND ORDERED** in Chambers at West Palm Beach in the Southern District of Florida, this 6th day of November, 2020.

DAVE LEE BRANNON
U.S. MAGISTRATE JUDGEs